[No. 2029.]

## MARCELINO GARCIA *v.* THE STATE.

1. ASSAULT WITH INTENT TO MURDER.— PENALTY for an assault with intent to murder is fixed by statute (article 493 of the Penal Code) at confinement in the penitentiary not less than two nor more than seven years, unless such assault is made with a bowie-knife or dagger, or in disguise, in which event it shall be double.

2. SAME — INDICTMENT — CHARGE OF THE COURT.— This indictment for assault with intent to murder omitted to charge the weapon with which it was committed. The evidence showed that it was committed with a weapon which, under the statute, is a bowie-knife or dagger. The court charged the award of the higher penalty if the jury convicted and found from the evidence that the assault was committed with a bowie-knife or dagger. *Held,* that the charge was error because unauthorized by the allegations in the indictment. See the opinion *in extenso* on the question.

3. SAME — AGGRAVATED ASSAULT AND BATTERY.— See the opinion *in extenso* for proof in a prosecution for assault with intent to murder which demanded of the trial court a charge upon the law of aggravated assault and battery,

APPEAL from the District Court of Webb. Tried below before the Hon. J. C. Russell.

The conviction in this case was for an assault with intent to murder, committed upon the person of one Encarnacion Diaz, in Encinal county, Texas, on the 29th day of April, 1884. A term of ten years in the penitentiary was the penalty awarded.

Quirino Perales testified, for the State, that in April, 1884, he was constable of Encinal county, which for judicial purposes was attached to Webb county. Word was sent to the witness about 10 o'clock on the night of April 29th, to go to the house of Herculano Ramirez to see a wounded man. On his arrival witness found Encarnacion Diaz lying on the floor with three knife wounds in his body, one in the leg just above the knee, one in the right side above the hip, and one in the left breast. While there witness learned who had inflicted the wounds, and went to the office of Justice of the Peace Spohn and filed complaint, and received from Judge Spohn a warrant for the arrest of the defendant. Witness arrested the defendant about midnight, some six miles from the Los Machos ranche, where it was said the cutting occurred. Defendant was then traveling in the direction of Cotulla, in La Salle county. On his person the witness found a butcher-knife about nine inches long, which was covered with blood. The defendant and the knife were turned over to Judge Spohn, who on the next day held an examining trial, at which both the defendant and Diaz were present. Both the defendant and Diaz lived on the Los Machos ranche in La Salle county, and were well known to witness. Witness did not know the present whereabouts of Diaz, although it was the general understanding that he was in Mexico.

Cross-examined, the witness said that he knew nothing, of his own knowledge, about the cutting, nor whether it was done in Encinal county. Los Machos ranche was in Encinal county.

Felipe Villareal was the next witness for the State. He testified that he knew the defendant, and he knew the wounded man as "Jose" Diaz. Both men lived at Los Machos ranche in Encinal county, in 1884. About 10 o'clock on the night of April 29, 1884, witness was called to see a wounded man at the house of Ramirez, who lived about fifty yards from witness. He found Diaz lying on the floor, badly wounded. He did not examine Diaz's wounds. Diaz told witness who did the cutting. Witness was present at the examining trial next day, and saw both defendant and Diaz in attendance. The Los Machos ranche, where defendant lived, and

where the houses of the witness and Ramirez were situated, is in Encinal county.

Justice of the Peace Peter Spohn was the next witness for the State. He testified that he held the examining trial of one Marcelino Garcia upon this charge. Witness had never seen the man before, and could not say that the man on trial was the man whose examining trial he held. The defense objected to any further testimony by the witness, in view of his inability to identify the defendant as the man Garcia whose examining trial he held. The State thereupon recalled Quirino Perales, who testified that the defendant was the identical man over whose examining trial the said Spohn presided. Spohn then testified, that about 10 o'clock on the 29th of April, Perales informed him that a man had been stabbed at the house of Ramirez, on the Los Machos ranche in Encinal county, which house was about a half mile from witness's house. Witness went to the house of Ramirez and found Diaz lying on the floor, in what he then thought was a dying condition. He had been stabbed in three places as described by Perales, and was very much exhausted. The witness there and then issued a warrant for the arrest of Garcia, and placed it in the hands of Perales for execution. Garcia was brought to witness's house under arrest about 1 o'clock, when witness took him to Ramirez's house for identification. His examining trial was held at the house of Ramirez, where Diaz was confined with his wounds. Witness reduced the statements of all the witnesses to writing, in the presence of defendant. Diaz made his statement under oath; it was reduced to writing and subscribed by Diaz, in the presence of the defendant. Defendant, during the progress of the examination, attempted frequently to speak, but was as often cautioned by witness that his statements might be used against him. Garcia persisted in his purpose to talk, and said: "All I have to say about this is, that I did cut Encarnacion Diaz. He came at me and struck me with a bottle, and I cut him with my knife, and all I regret is that I did not kill him."

Cross-examined, the witness said that defendant, at the time he made the statement recited, exhibited a cut or wound on his head which he said was inflicted by a bottle in the hands of Diaz. Diaz was not dead so far as witness knew. He did not know where Diaz was.

The State introduced two witnesses who testified that the present residence of Diaz and his family was in New Laredo, Mexico. Upon this predicate, the testimony of Diaz as reduced to writing on the

examining trial was identified by the witness Spohn, and read in evidence.    It reads as follows:

"On the night of April 29, 1884 (Tuesday), I was at the Machos ranche in Encinal county.    On the morning of that day I had lent $2 to Marcelino Garcia, which he was to repay me on the same night.    On the evening of the same day I lent him twelve cents more, with which he bought coffee for himself and me.    After we finished drinking the coffee he wanted me to go with him a short distance into the brush.    We went out into the brush together about a half mile, when he told me that he had not the money at present to repay me what I had lent him, but that if I liked he would pay me with a couple of bottles of mescal which, he said, he then had at a place near where we were.    I told him that, if he did not have the money, I would take the mescal.    We then went to where he said he had the mescal hid, but only found an empty "mateta."    He then said that some one had stolen his mescal, whereupon I replied that I did not believe he had ever had any mescal at that place, and that he was trying to fool me.    We then turned to go back to the ranche, and, when within about one hundred yards of the ranche, he stopped me and said that it was his opinion that I had stolen his mescal.    I replied that he lied, that I did not believe he ever had any mescal out there, and that his only object was to get out of paying me my $2.    He replied that he had a pistol which he would sell next day and pay me on condition that I returned his mescal, which he still insisted that I had stolen.    We had a few words over it, when he said to me that if I did not return his mescal, I would have to fight.    He drew his knife and gave me the first stab as he said this.    I jumped back and struck him over the head with a bottle I had in my hand, breaking the bottle, and falling down.    When I fell he rushed on me.    I raised to my feet to keep him off, when he stabbed me in the right leg.    I then called to him not to kill me, but he struck me twice — once in the right and once in the left side, and left in a run.    I had strength enough left to get back to the house of Ramirez, where I was staying.    The prisoner is the man who stabbed me."

The motion for new trial presented the questions discussed in the opinion.

*E. F. Hall*, for the appellant.

*J. H. Burts*, Assistant Attorney-General, for the State.

HURT, JUDGE. This indictment charges an assault with intent to murder, omitting the weapon with which said assault was made. The proof shows that the assault was made with a butcher-knife, such as, under the statute, is a bowie-knife or dagger. (Penal Code, art. 611.)

Unless the assault be made with a bowie-knife or dagger, or in disguise, the punishment is confinement in the penitentiary not less than two nor more than seven years. If, however, it be made with a bowie-knife or dagger, or in disguise, the punishment shall be double. (Art. 493, Penal Code.)

Notwithstanding it is not alleged that the assault was made with a bowie-knife or dagger, the learned judge charged the jury: " You are further instructed that if you find from the evidence that the assault, if any, was made with a bowie-knife or dagger, then the punishment will be by confinement in the penitentiary not less than four nor more than fourteen years." Under the above charge the jury assessed appellant's punishment at confinement in the penitentiary for the term of ten years.

The question is: Was it error to submit to the jury this charge? We think so. Upon this subject Mr. Bishop says: " In other connections and in various aspects of the question we have seen that every indictment must distinctly set down each and every individual act and intent which, in matter of law, determines or influences the punishment." (1 Bish. Crim. Proc., 538.) Again he says: "If the punishment to be inflicted is greater or less according to the value of the property, it must be stated in the indictment, because every indictment, for whatever offense, must set out every circumstance which the law makes an element in the punishment." (2 Bish. Crim. Proc., 48.)

Now the plain reason of the rule is, that if the circumstances which constitute the crime or increase the punishment are not set out in the indictment, the accused would not be informed of the offense with which he is charged, or of the penalty to which he is liable. (2 Bish. Crim. Proc., 572.)

There was no person who saw the assault except the prosecutor, Diaz. The State introduced in evidence the confessions of defendant, who stated: " All I have to say about this is that I did cut Encarnacion Diaz. He came at me and struck me with a bottle, and I cut him with my knife, and all I regret is that I did not kill him."

Upon this theory of the case, the trial judge submitted to the jury the law of self-defense. When viewed, however, with refer-

·ence to the testimony of Diaz, we are of the opinion that a charge should have been given upon the question of aggravated assault and battery, because of the passion aroused by the provocation arising from the blow with the bottle. We are not to be understood as intimating that such passion was produced in the mind of defendant, but that under defendant's theory this question should have been submitted to the jury.

Because under the allegations of this indictment the court below was not warranted in charging the jury that if they believed from the evidence that the assault was made with a bowie-knife or dagger they would assess his punishment from four to fourteen years, and from failure to charge upon aggravated assault, the judgment is reversed and the case remanded.

*Reversed and remanded.*

[Opinion delivered November 18, 1885.]